**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**SUSANNE K. TRONE,**

Plaintiff,

v.

**UNIPAC SERVICE CORPORATION,**

Defendant.

---

Civil No. 00-399 (MJD/JGL)

**O R D E R**

APPEARANCES

Paul Lukas, Esq., for Plaintiff Susanne K. Trone.

Edward Cassidy, Esq., for Defendant Unipac Service Corp.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on June 22, 2000, on Defendant's Motion to Compel Plaintiff's Attendance at an Independent Medical Examination (Doc. No. 8) and on Plaintiff's Motion to Amend Scheduling Order (Doc. No. 11). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I. <u>Plaintiff's Motion to Amend the Scheduling Order.</u>**

Plaintiff asks this Court for an Order extending the deadline for disclosure of Plaintiff's expert reports from July 15, 2000, to August 15, 2000. If the motion is granted, Defendant's deadline for disclosure of expert reports

FILED JUN 23 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

should likewise be modified from September 1, 2000, to October 1, 2000. As good cause, Plaintiff asserts that the schedule of her emotional distress damages expert, Dr. Susan Phipps-Yonas, requires the extension. Defendant does not object to the extension. The Court finds that Plaintiff has shown good cause for a modification of the pretrial schedule as mandated by D. Minn. LR 16.3(a), and Plaintiff's motion to amend is granted.

## II. Defendant's Motion to Compel Plaintiff's Attendance at an Orthopedic, Independent Medical Examination.

Plaintiff's cause of action in this case is retaliatory termination. Plaintiff alleges that Defendant wrongfully terminated Plaintiff for pursuing a workers' compensation claim. In the factual portion of the Complaint, Plaintiff states that she sustained work-related physical injuries (repetitive stress injuries to her upper extremities), which led her to file a workers' compensation claim. Plaintiff further alleges that she suffers consequential psychological harm as a result of Defendant's conduct. Plaintiff seeks damages for loss of past and future income, mental anguish, emotional distress, and other unspecified damages.

Plaintiff has agreed to submit to a psychological examination, but she refuses to submit to a physical medical examination. Therefore, pursuant to Fed. R. Civ. P. 35(a), Defendant seeks to compel Plaintiff Trone's attendance at an orthopedic, independent medical examination.

An independent medical examination is permitted only within the discretion of the court. When the physical condition of a party is "in controversy," the Court may order that person to submit to a physical examination for "good cause shown." See Fed. R. Civ. P. 35(a) (1991). Before a court may order the examination, the movant must therefore show that the physical condition of the person is in controversy and that there is good cause for the examination. See Fed. R. Civ. P. 35(a) (advisory committee's note 1970). These two requirements are not mere formalities and are not satisfied by conclusory allegations or by bare relevance to the cause of action. See Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964).

**A. "In Controversy."**

As for the requirement that the physical condition be "in controversy," Defendant in this case submits that Plaintiff Trone's physical condition is in controversy because Plaintiff, in her Complaint, alleges that she sustained a work-related physical injury. Furthermore, Plaintiff avers that the injury was the basis for filing a workers' compensation claim, which purportedly resulted in her termination by Defendant. In Defendant's Answer, Defendant denies that Plaintiff sustained a work-related injury and that Plaintiff was terminated for pursuing a workers' compensation claim. Thus, Defendant argues, the issue of whether Plaintiff sustained a work-related physical injury is in controversy.

Plaintiff responds that her physical condition is not in controversy in this litigation for the following reasons. First, Plaintiff's cause of action is for retaliatory termination; thus, the only issue with respect to liability is whether Plaintiff's termination was motivated by Plaintiff seeking workers' compensation benefits. Second, Plaintiff is not seeking damages for her alleged work-related physical injury; rather, she is alleging that her psychiatric condition, not her physical condition, has prevented her from replacing her lost income. At the motion hearing, Plaintiff's counsel explicitly stated that Plaintiff has waived all arguments and claims related to her physical condition, including her allegation that her physical condition caused her psychological condition.

The "in controversy" requirement is not satisfied by conclusory allegations in the pleadings or by mere relevance to a claim. See Schlagenhauf, 379 U.S. at 118. In some cases, a pleading may form a sufficient basis to satisfy the requirements of Rule 35. See id. at 119 (for example, where a party in a negligence action explicitly bases the cause of action on physical injury); Curtis v. Express, Inc., 868 F. Supp. 467, 468 (N.D.N.Y. 1994). However, the movant must always show that the condition "is really and genuinely in controversy." Schlagenhauf, 379 U.S. at 118. Bare factual allegations, without more, in a complaint will not suffice to place a party's physical or mental condition in controversy.

In O'Sullivan v. Minnesota, 176 F.R.D. 325, 327 (D. Minn. 1997), the plaintiff alleged in her complaint that she suffered mental anguish and emotional distress as a result of the defendant's actions, but the plaintiff did not plead an intentional or negligent infliction of emotional distress claim. The court found that the defendant was not entitled to conduct a mental examination of the plaintiff, in part because the plaintiff was not presenting any psychological expert testimony at trial, was not claiming a diagnosable condition, and testified at her deposition that she thought she was in good mental health. See id. The court considered the plaintiff's allegations to be "bare and boilerplate" and insufficient to conclude that the plaintiff's mental condition was in controversy. See id.

In this case, the Court finds that Plaintiff Trone's physical condition is not in controversy, based solely on Plaintiff's counsel's representations to the Court. Like the plaintiff in O'Sullivan, Plaintiff Trone has waived all arguments and claims regarding her physical condition. Plaintiff's counsel expressly stated at the hearing that Plaintiff would not testify at trial about her physical condition and that Plaintiff has waived all arguments and claims regarding her physical condition, including Plaintiff's allegation that her physical condition caused her psychological harm. Plaintiff points to the portion of her deposition in which she admitted that her psychological

condition, not her physical condition, prevents her from working and from looking for work. (Pl. Dep. at 151-52, 156, 159.)

The Court does not find Defendant's position to be without merit, however. For example, there is testimony in Plaintiff's deposition in which Plaintiff indicated that psychological harm is related to, if not caused by, her physical limitations.

> Q So I'm just a little bit confused. What is it about your psychological condition that keeps you from looking for work?
>
> A It's very upsetting looking for work and see things that I want to do and used to be able to do and no longer can do.
>
> Q Give me an example of that if you would, please.
>
> A Typing, data entry, any receptionist work, you're going to have to do typing.
>
> Q And how does that make you feel when you see a job like that that you don't think you can do?
>
> A It's distressing.
>
> Q When you say you don't think you can do those jobs and it upsets you, what do you mean by you don't think you could do them?
>
> A I can't do that amount of typing anymore.
>
> Q Would it be fair to say that it's upsetting to you when you see these jobs you can't do because you assume those jobs are outside Dr. Paulson's restrictions?
>
> A They usually are.

(Pl. Dep. at 160.) Additionally, the Workers' Compensation Judge determined that Plaintiff's depression was a direct consequence of Plaintiff's physical injury,[1] based on a diagnosis by Marilyn F. Mason, Ph.D. (Pl. Ex. F at 3.) On one hand, it appears to the Court that Plaintiff's claim of psychological harm is inextricably linked to Plaintiff's alleged physical injury. However, Plaintiff's counsel has assured the Court that Plaintiff will not present direct evidence or argument related to Plaintiff's physical condition.

Rule 35 has been interpreted as an attempt to level the playing field in assessing a party's physical condition. See Tomlin v. Holecek, 150 F.R.D. 628, 632 (D. Minn. 1993) (citation omitted). At this time, the Court regards the field as level; however, should facts or circumstances change in the future, either party may seek relief from this Court. Defendant's motion to compel Plaintiff's attendance at an independent medical examination is denied.

**B. "Good Cause."**

Even if this Court had determined that Plaintiff's physical condition is in controversy, however, the Court would nevertheless deny Defendant's motion for failing to show good cause. Regarding the "good cause" requirement, Defendant states that Plaintiff's allegation of a physical, work-related injury constitutes good cause for an independent medical examination.

---

[1] The Court declines to consider whether the Administrative Law Judge's findings and conclusions have res judicata effect in this case.

Plaintiff rebuts Defendant's arguments for the reasons discussed in Part II.A., and furthermore, Plaintiff observes that she has already been independently examined by a physician of Defendant's choice on April 28, 1999.

The examiner, Dr. Paul Cederberg, found that Plaintiff had "resolved carpal tunnel syndrome" and opined that there was no objective evidence for a diagnosis as of the time of the examination. (Def. Ex. J. at 4.) Dr. Cederberg concluded that there was no reason for further treatment.

Courts have found good cause to permit additional examinations under the following circumstances: (1) when separate injuries call for examinations by distinct specialists, see Marshall v. Peters, 31 F.R.D. 238, 239 (D.C. Ohio. 1962); (2) if assistance from other consultants is necessary to render a diagnosis, see Little v. Howey, 32 F.R.D. 322, 323 (W.D. Mo. 1963); (3) if the first examination was inadequate or incomplete, see Mayer v. Illinois Northern Ry., 324 F.2d 154, 156 (7th Cir. 1963); and (4) when substantial time passes between the initial examination and the lawsuit, see Lewis v. Neighbors Constr. Co., 49 F.R.D. 308, 309 (W.D. Mo. 1969).

A primary reason for refusing to order a second examination is that there has been no showing of a change in the party's situation or condition. See, e.g., Moore v. Calavar Corp., 142 F.R.D. 134, 135 (W.D. La. 1992). Likewise, good cause has not been shown where the examinations would be duplicative or cumulative. See Stanislawski v. Upper River Servs., Inc., 134

F.R.D. 260, 262 (D. Minn. 1991); Acosta v. Tenneco Oil Co., 913 F.2d 205, 209 (5th Cir. 1990). Finally, where a party has been examined by an independent physician selected by the opposing party, with respect to the same physical condition and at a time close to the start of litigation, there is no good cause for a second examination. See Stewart v. Burlington Northern R.R. Co., 162 F.R.D. 349, 350-51 (D. Minn. 1995) (regarding multiple orthopedic examinations); cf. Stewart v. Burlington Northern R.R. Co., 173 F.R.D. 254, 256 (D. Minn. 1995) (addressing multiple vocational examinations; finding that prior examination varied in scope and purpose from proposed second examination, thereby providing good cause for the second examination).

Applying the above factors to the present case, the Court concludes that Defendant has not shown good cause to compel Plaintiff's attendance at an independent medical examination. Plaintiff is not suffering from separate or distinct physical injuries. There is no evidence that assistance from other consultants is necessary, nor does Defendant allege that the examination by Dr. Cederberg was inadequate or incomplete. Dr. Cederberg conducted his examination of Plaintiff on April 29, 1999, after which approximately ten months passed before Plaintiff filed her Complaint on February 10, 2000. The Court finds that ten months is not a substantial amount of time, especially given that neither party has alleged a change in Plaintiff's physical condition between those dates. Given the circumstances of

this case, an additional examination of Plaintiff would likely be cumulative and duplicative. Finally, the Court notes that Plaintiff was examined by Dr. Cederberg, an independent physician selected by Defendant, with respect to the same physical condition relevant to this litigation: repetitive stress injuries to her upper extremities. Consequently, the Court finds that Defendant has failed to show good cause for an independent medical examination of Plaintiff, and Defendant's motion is therefore denied on this basis as well.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Defendant's Motion to Compel Plaintiff's Attendance at an Orthopedic, Independent Medical Examination (Doc. No. 8) is **DENIED**; and

(2) Plaintiff's Motion to Amend the Scheduling Order (Doc. No. 11) is **GRANTED**. The deadline for Plaintiff's expert disclosures is modified from July 15, 2000, to August 15, 2000. Defendant's deadline for disclosure of expert reports is modified from September 1, 2000, to October 1, 2000.

Dated: June 23, 2000.

JONATHAN LEBEDOFF
United States Magistrate Judge